JEAN H. SAUNDERS *v.* PHILIP K. SAUNDERS

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, Js.

Argued May 5—decided July 14, 1953

*Sidney Vogel,* for the appellant (plaintiff).

*Bernard S. Peck,* with whom was *Frank Logue,* for the appellee (defendant).

O'SULLIVAN, J.   The plaintiff wife instituted this action against her husband to obtain a decree of divorce on the ground of intolerable cruelty.   The court found the issues for the defendant.   From the judgment rendered thereon, the plaintiff has appealed, assigning error in the finding, in the overruling of her claims of law and in certain rulings made by the court before and after judgment.

The following is a summary of the facts found: The defendant married the plaintiff at Greenwich on June 28, 1946.   At the time of trial, the plaintiff was twenty-nine, the defendant fifty-one.   There are two children of the marriage, one born in April, 1948, and the other in May, 1950.   After living for a short time in Mamaroneck, New York, the parties moved to

Ridgefield, Connecticut. From then until the plaintiff separated from her husband in December, 1949, they traveled extensively, both here and abroad. They went to England in the fall of 1946, and they spent a part of the first two winters of their married life on the defendant's yacht in Florida waters. They cruised to Maine during the summer of 1947 and to Bermuda in the fall of 1948 and the spring of 1949.

Sometime during April, 1949, Leonard J. Fry accepted employment on the defendant's yacht. In November, 1949, the plaintiff and Fry became infatuated with each other. On November 28, they wrote a joint letter to friends of theirs professing their love for each other and announcing their intention of becoming married "as soon as they could dispose of their respective spouses." Shortly thereafter, the plaintiff told the defendant that she wished to be separated from him and, since then, they have not lived together. The plaintiff was in Fry's company almost daily from December, 1949, until the time of trial.

The defendant is deeply interested in religion. Although the parties have had the customary disagreements that ordinarily accompany married life, the defendant has always maintained a considerate attitude towards his wife and has usually acceded to her wishes. Until November, 1949, the parties enjoyed a happy married life. During all of that time, the plaintiff was in good health and in frequent contact with her own family and friends.

The plaintiff concedes that her position on this appeal is hopeless if the finding remains uncorrected, since the narrated facts could logically lead to no other possible conclusion than that she had failed to make out a case. Accordingly, she has assigned error in the refusal of the court to find 112 paragraphs of

her draft finding, claiming that they incorporated facts "which were admitted, undisputed, or admitted with justifications and explanations." In the cause of good practice, we invite attention to the rule which prevents our adding any facts other than those which are "admitted or undisputed." Practice Book § 397. Then again, if the desired additions were to be allowed, they would inject into the finding a series of facts entirely at odds with many of those which the court found and which the plaintiff has not attempted to have stricken. No effort should ever be made to add to a finding any facts which are inconsistent with those found without also seeking to strike out the latter. *Madore* v. *New Departure Mfg. Co.*, 104 Conn. 709, 722, 134 A. 259; Maltbie, Conn. App. Proc., § 93. But this aside, the additions which the plaintiff asks us to incorporate in the finding are by no means admitted or undisputed facts. The court expressly found that as to many of them there was no evidence worthy of credence. They merely represent the plaintiff's notion of what she would like to have had the court find upon conflicting evidence. By the assignment of error under discussion, she really seeks to have us retry the case. This we cannot do. *African Methodist Episcopal Church* v. *Jenkins*, 139 Conn. 418, 423, 94 A.2d 618.

The plaintiff challenges various conclusions reached by the court on the facts actually found. For example, in an obvious reference to the planned program of the plaintiff and Fry to "dispose of their respective spouses" in order that the two schemers might marry each other, the court concluded that the plaintiff's petition for a divorce "was an unworthy, discreditable and disgraceful venture." It would have been better had this been left unsaid, because it has subjected the trier to the criticism that his

decision was influenced by his own personal concept of the morality of the plaintiff's conduct in seeking a divorce. We do not view the trier's characterization in the light with which the plaintiff attempts to surround it. A divorce is, of course, not to be denied a party merely because his or her conduct appears to the court to deserve censure. *Reddington* v. *Reddington*, 317 Mass. 760, 764, 59 N.E.2d 775. But that is not to say that a court must ignore a motive prompting a litigant to seek a decree. The plaintiff's statement under oath that, if a divorce were granted, she proposed to marry another with whom she proclaimed herself to have been in love at the time that she instituted this action was indicative of a possible motive to falsify and was available for the court to consider when testing the credibility of her testimony upon the crucial issue of intolerable cruelty. The court's characterization was a written record of the reason for its doubt as to her trustworthiness as a witness.

The vital conclusions which the court reached find ample support in the subordinate facts. Notable among these is the conclusion that the "defendant's conduct fell far short of being so intolerable as to render continuance of the marital relationship unbearable." Since this controlling conclusion was one which was not only logical but also inevitable, it must stand.

The plaintiff assigns error in two rulings made on her motions for counsel fees. One of these motions was addressed to the court before, and the other after, judgment. With respect to the former, the record shows that on June 10, 1951, the defendant paid $1500 as counsel fees to the plaintiff, thus complying in full with the court's previous order. During the course of the actual trial, the plaintiff moved for a

further allowance. The denial of this motion is the source of her alleged grievance. An allowance for counsel fees is within the sound discretion of the trial court. *LaBella* v. *LaBella,* 134 Conn. 312, 319, 57 A.2d 627. Since the plaintiff had already received $1500 as counsel fees, it is difficult to grasp her complaint. Certainly there is nothing in this record to indicate that the court abused its discretion in denying her request for an additional allowance.

The other ruling referred to above was made after the rendition of judgment. In passing, we point out that the ruling falls squarely within the provisions of § 403 of the Practice Book, and therefore an appeal from it should have been included in the appeal from the judgment in the case. Because the plaintiff failed to follow this procedure, a question might be raised as to our authority to review the ruling. If the propriety of our doing so is assumed, the plaintiff has not been legally aggrieved. The test for the trier to apply upon an application for an allowance to prosecute an appeal in a divorce action is whether the wife is justified in taking the appeal and whether the resources of the parties are such as to require the husband to finance it. *Bielan* v. *Bielan,* 135 Conn. 163, 170, 62 A.2d 664; *Schilcher* v. *Schilcher,* 124 Conn. 445, 448, 200 A. 351. The plaintiff criticizes the rule as being unfair, in that it constitutes the trial judge his own appellate court. The same claim could be urged with respect to the court's passing upon a motion to set a verdict aside because of errors in the charge or in rulings made during the trial. Whether the ruling occurs in a divorce action or in one involving a jury's verdict, the litigant is amply protected by his or her right of review by this court.

One of the reasons given by the trier for denying the application was that the appeal was "without

merit and worthless since it appears to raise no substantial questions of law." This was a sufficient ground, under the test, for the court's ruling. *Valluzzo* v. *Valluzzo*, 104 Conn. 152, 155, 132 A. 406. In view of the circumstances presented by this record, the court did not abuse its discretion.

The plaintiff further assigns error in the refusal of the court to find the defendant in contempt. Here again, we shall assume that the matter has been properly presented under § 403 of the Practice Book. With respect to this assignment, the facts are as follows: The suit was instituted on January 4, 1951. On May 28, 1951, the court made its order requiring the defendant to pay $500 monthly to the plaintiff as alimony pendente lite. The defendant fully complied with the order until judgment was rendered in his favor on December 7, 1951. The plaintiff took her appeal on December 19, 1951. On December 29, 1951, she filed a motion requesting that the defendant be adjudged in contempt for failing, after judgment, to honor the order of May 28, 1951. This motion was subsequently denied.

An order for alimony pendente lite is interlocutory and terminates with the judgment which follows it. Thus, the order of May 28, 1951, came to an end and was no longer operative when judgment was rendered on December 7, 1951. Nor was the order reinstated by the plaintiff's taking her appeal. An appeal does not vacate a judgment; it serves only to stay the enforcement of the rights acquired by the successful litigant. Practice Book § 411. In other words, the judgment of December 7, 1951, was final unless set aside by this court, and it disposed with finality of all interlocutory orders. *Eldridge* v. *Eldridge*, 278 Mass. 309, 314, 180 N.E. 137. It necessarily follows that the defendant should not have been ad-

judged in contempt for failure to comply with an order which had become inoperative.

There is no error.

In this opinion the other judges concurred.